## D. WILLIS v. B. HARRIS.

The obligation of the hirer, in a general hiring of a slave, is to use reasonable diligence and care.

If the contract of hiring was general, the employment of the slave in cleaning out an ordinary well raised a question of diligence and care for the determination of the jury upon the evidence ; and if the evidence was inconclusive as to whether the hiring was general or special, it was error for the court to assume that it was special, and to exclude evidence that, according to the custom of the country, the employment of the slave in cleaning out a well was ordinary labor in which, under a general hiring as a farm hand, the slave might lawfully be employed. *Held*, further, that in such a case it was error to exclude evidence that the well in question was not in itself dangerous, and that the hirer had taken precautions against danger before sending the slave into it, thus tending to show the exercise of reasonable diligence and care.

Even if the contract of hiring was special, " to split rails and work on a ranch," it was competent for the defendant to prove that the cleaning out of such wells as that in question was ordinary and customary labor required of hired hands in that section of the country; and it was error to exclude such evidence as irrelevant.

" Ordinary and customary labor " is that for which hands are indifferently selected, and which all of sufficient strength and capacity are expected to do. Labor, which is of such a character that a hand is usually selected for it on account of his peculiar prudence or experience, is not " ordinary and customary labor."

The questions, whether the labor in which the slave was engaged when he lost his life was or was not incident to the service for which he was hired, and, if it was, whether or not the hirer used reasonable diligence and care considering the hazards of the work, were matters of fact for the jury to determine ; and the only control which the court could exercise over them was in granting a new trial if the jury should find against the evidence or misapply it to the rules of law.

ERROR from Gonzales. Tried below before the Hon. Fielding Jones.

This suit was brought by Harris, the appellee, against Willis, the appellant, to recover the value of a slave hired by the former to the latter, which slave lost his life in cleaning out a well for the defendant.

The petition alleged the hiring of the slave to be for his employment " on the ranch or plantation of said Willis, only in the

usual and ordinary work of farm servants," and charged that the "work of cleaning out a well was not embraced in the terms and stipulations" of the contract, but was contrary thereto; and further, that if such work was "usual and ordinary work on a farm or ranch, such as hands are expected to engage in when hired out, that said Willis did not use proper precaution and care with said slave when he employed or put him in the dangerous work of cleaning out the said well."

The defendant answered with a general denial, and specially alleged that the hiring was general for all kinds of farm work, averring that cleaning out a well was ordinary and customary work on a farm; and further alleging that the well in question was safe and in good order, and that he, defendant, had used due diligence, care and precaution, in the premises.

With reference to the character of the hiring, the evidence is recited in the opinion. Defendant introduced evidence to prove that the cleaning out of a well was ordinary labor on a farm or ranch, according to the custom of the country; that the well in question was shallow and safe, being only about thirty-two feet deep, and its walls sound; that the slave went down into it twice and got out of it safely on the morning of his death; and that the defendant "bushed out" the well and tested the atmosphere with fire before the slave entered it. It appeared that a while after the last entrance of the slave, he had called out for help, and seized a rope immediately let down to him, but soon let it go again, and died in about half an hour. All of the above evidence offered by the defendant was excluded by the court from the jury. Verdict for plaintiff, and a new trial refused, and defendant brings the case up by writ of error.

*H. L. Parker*, for plaintiff in error, cited Sayles' Practice, § 549; 9 Tex. R., 426; 17 Tex. R., 558; 7 Tex. R., 338.

*Mills*, for defendant in error, cited 7 Tex. R., 561; 16 Tex. R., 295; 7 B. Monroe R., 664.

ROBERTS, J. The plaintiff below, Harris, set forth in his pe-

tition a hiring of the slave for a special business, to wit, for splitting rails and working upon a ranch. The defendant below, Willis, alleged that the hiring was general and not special. The evidence upon this point was that a brother of Harris, at his request, spoke to Willis about the hiring of the slave, and Willis said that "he wanted to hire a boy to split rails and work on his ranch eight miles west of Gonzales." After this the negro was hired to Willis by Harris, but upon what terms is not otherwise shown.

This evidence may in some degree tend to prove that the hiring was special, as alleged by plaintiff Harris; but it is not conclusive of the fact.

The court predicated its ruling in the admission of testimony upon the supposition that the contract of hiring was special, as alleged, and excluded testimony offered to prove that working in that well was not dangerous, being shallow, and that due care was taken to prevent injury to the slave from going into the well. If the hiring was general, as the jury might have presumed it to be, from the absence of proof as to what took place at the time of hiring, then employment of the slave about the well was a question of diligence and care, just as it would be in building a cabin, in driving cattle, in exposure to rain, cold, or heat, and the like. The cleaning out of a very shallow well, with proper precautions, might involve no considerable danger whatever. It would not be more dangerous than the work of erecting a corn-crib, or of stacking fodder. Some wells are not more than eight or ten feet deep, and though it may be a disagreeable employment, it is not more hazardous, with reasonable caution, than rolling logs, and many other things usually done on a farm. If, however, it was a deep well, or one of ordinary depth, or if it had noxious air in it, it might be considered extraordinary risk to work in it at all, however great the care taken, which would make the party requiring it of a hired slave guilty of gross negligence in the management of the slave. The obligation of the hirer in a general hiring of a slave is to use reasonable diligence and care.

This may involve the character of the employment at which the slave is placed. For instance, although it might be proper to send

Willis v. Harris.

a negro upon the prairie to drive up cattle on a cold day, to do the same thing during a hard norther, in which a man might freeze in a few hours, would be gross negligence, arising out of the circumstances which made the employment hazardous, and made it unreasonable at the time.

Inasmuch, then, as it was a disputed fact whether the hiring was general or special, and the evidence did not settle it conclusively, the court should have permitted the defendant below to have shown, if he could, that the sending of the slave into this well was not of itself a dangerous employment, by showing that the well was shallow, and that precautions were taken to avoid any risk, and that he was unexpectedly killed by accident. There were facts enough developed to render it perhaps improbable that he could have shown that this employment was not hazardous. In principle that is immaterial; he should have been allowed to furnish the best evidence of it he could. Every one knows from observation that working in a well is usually a dangerous employment, and that many persons have been killed while thus engaged. Still it does not follow that working in every well, under all circumstances, is a dangerous employment. And if this was one of the possible cases in which it was not dangerous, the defendant had a right to show it.

Upon the supposition that the jury might find that the contract was for a special hiring to split rails and work on a ranch, the defendant below sought to prove that cleaning out a well was ordinary and customary work required of the laborers and hired hands upon a ranch in that section of the country, which was objected to and excluded as irrelevant. If such was the case, and it was so notorious as that Harris must have known that his negro would be liable to be put to such work as a usual employment of a hired hand, then it would be presumable that the employment embraced such work, and that the risk was estimated in fixing the price of the hire.

Suppose, for instance, it were shown that herds were watered at wells during the dry season of the year in that section of the country, which is known to be the case in some countries, and that it is the regular business of laborers upon a ranch to clean out

and dig new wells in the beds of the dry streams, or upon the plains, to supply the herds continually with water; in such a case there could be no question but that cleaning out a well was part of the work upon a ranch expected of a hired hand. We have regions of country in this State where such a state of things may exist, when they are populated, if we have not already. Their existence or non-existence in Gonzales county is matter of fact, not of law. The necessity for the employment of laborers in wells may exist there in a much less degree than that in the case supposed, and still it may be customary employment for hired laborers; and that too is matter of fact, and not of law. The difficulty in the case is in the court divesting itself of the improbability that Willis can establish that cleaning out wells is customary work of laborers on a ranch in Gonzales county. However improbable such a thing may seem to be in fact, still if such is the case, and he can show it, he is entitled to the benefit of it.

We may know, as matter of fact, that upon most of the ranches there is a well, which must be cleaned out during the year, and that usually some one of the hands is selected to go into the well of his own free will. He is selected on account of his prudence and experience in a business usually more or less hazardous on account of its liability to accidents. The one selected may generally be a laborer on the ranch or farm, or he may be procured from some other ranch or farm on account of his prudence or experience. Such a state of things would not show that cleaning out a well was ordinary and customary labor on a ranch, which any and every laborer is expected to do; nor would a jury be justified in so concluding. It would, on the contrary, although occasionally necessary to be done, be special labor, for which some one would be selected on account of his prudence or experience. To be ordinary and customary labor on a ranch, it must be that for which hands are indifferently selected, and which each and every one of sufficient strength and capacity is expected to do. This distinction jurors would readily understand, and practically act upon, in determining the issue of facts.

The effort of Willis was simply to show that the cleaning out of a well was incident to the service on the ranch, if the jury

Willis v. Harris.

should believe that was the special service for which the slave was hired. If he had shown it to be such, he would still have been bound to have used care and diligence in proportion to the danger of the work. And in determining the degree of care and diligence, the question is not how much do men generally risk who are accustomed to this hazardous work. For frequent exposure to danger often makes men reckless of it. The true question is, what precautions to prevent injury should reasonably be adopted under the circumstances. If, for instance, noxious air be found in a well, the fact that persons do go into it after using the ordinary means to expel such air, does not prove that it is a prudent act. Ordinary prudence would require that certain tests should be applied to ascertain that the noxious air had been expelled; and while there was a doubt of that fact remaining, no person should descend in the well, without having a rope around his body, so that he could be instantly drawn out upon the first manifestation of danger. Considering the danger of such an element to human life, it is difficult to see how a less degree of care could be held to be reasonable by a jury. Still, the questions whether the cleaning out the well was an incident of working upon the ranch, and whether or not, if so, Willis used reasonable care, considering the hazard of the work, were matters of fact for the jury. The only control which was in the province of the court, was in granting a new trial, if the jury should find against the evidence or misapply it to the rules of law.

The cases cited by counsel to sustain the ruling of the court are not in point. They are cases in which all the facts were in evidence, and so presented as to bring before the court a consideration of the whole matter, both of law and fact. (Sims v. Chance, 7 Tex. R., 561; Mills v. Ashe, 16 Tex. R., 301; Miller v. Ensley, 8 Humph., 428; Swigert v. Graham, 7 B. Monroe, 664.)

We are of opinion that the court erred in excluding the evidence.

Judgment reversed and cause remanded.

Reversed and remanded.